OPINION
In this appeal, the Hamilton County Sheriff, Simon L. Leis, Jr., challenges the order of the trial court affirming an arbitration award arising out of a grievance filed by the Truck Drivers, Chauffeurs Helpers Local Union No. 100, International Brotherhood of Teamsters, on behalf of Lt. Michael Schulte. The order upheld the arbitrator's decision to award to Lt. Schulte all documented lost wages he incurred while placed on "Administrative Attendance Watch" and, independent of the arbitrator's award, required the Sheriff pay the union's attorney fees.
On appeal, the Sheriff argues that the trial court erred in affirming the arbitrator's award because the arbitrator had exceeded her powers, and because the arbitration award did not draw its essence from the collective-bargaining agreement. Further, the Sheriff argues that the trial court erred by awarding the union attorney fees without statutory authorization. We find merit in the Sheriff's position only with respect to the attorney fees, and therefore we affirm in part and reverse in part.
 I.
There is no dispute that Lt. Schulte, as a supervisor in the corrections department of the Hamilton County Sheriff's office, was a bargaining-unit employee. The collective-bargaining agreement (CBA) provides that employees have a right to submit certain grievances to binding arbitration. The term grievance is defined in the agreement as "an allegation by a bargaining unit employee that there has been a breach, violation, misinterpretation, or improper application" of the CBA. The CBA expressly states that grievances that do not involve "loss of pay" shall not be subject to arbitration. On the other hand, grievances that involve "lost pay discipline" are expressly made subject to arbitration.
The Sheriff adopted General Order 305, Attendance and Fitness for Duty Performance Standards, which became effective on June 1, 1996. Under the order, employees of the Sheriff's office were subjected to a new attendance standard. The standard provided that an employee with a rate of absenteeism twenty percent above the established annual average would be subject to "administrative sanctions and/or disciplinary actions."
Lt. Schulte ran afoul of this standard and, on September 12, 1996, was placed on "Administrative Attendance Watch" for a period of six months. During this period, Lt. Schulte was not eligible, by the terms of General Order 305, for promotion, special assignment, permanent posts, overtime, and off-duty employment. He was consequently required to quit an off-duty job, consisting of approximately twenty to twenty-five hours per week, at a woodworking shop.
On September 28, 1996, Lt. Schulte filed a grievance, and the union submitted the matter to arbitration. While that grievance was still pending, a separate grievance filed by the Fraternal Order of Police had successfully challenged the validity of General Order 305. On February 7, 1997, a separate arbitrator ordered the Sheriff to either rescind or modify its provisions. The Sheriff responded by modifying General Order 305 to include a review of the justifications for the use of sick leave.
In an opinion and award dated June 19, 1997, the arbitrator appointed to hear Lt. Schulte's grievance found that he had been subjected to "loss pay discipline" as a result of his placement on "Administrative Attendance Watch." The arbitrator further noted that Lt. Schulte was kept on "Administrative Attendance Watch" for one month after the policy had been ordered either rescinded or modified. The arbitrator concluded, "While the policy has since been modified, [Lt. Schulte] did not receive the benefit of those modifications. Since the General Order pursuant to which [Lt. Schulte] was disciplined had been stricken down by another arbitrator, the discipline of [Lt. Schulte] was improper and without just cause." The arbitrator directed the Sheriff to remove the record of Lt. Schulte's placement on "Administrative Attendance Watch" from his employment file, and to reimburse him for "all documented lost wages from his off-duty employment" during the term of his placement.
The Sheriff refused to comply with the award and applied to vacate it in the court of common pleas. The reason stated in the Sheriff's application to the trial court was that the arbitrator had not limited her decision strictly to "interpretation, application, or enforcement" of the CBA, and that "she had no authority to order [the Sheriff] to reimburse Lt. Schulte for lost wages from his off-duty employment." The union applied to the trial court for an order confirming the arbitration award.
Both sides submitted briefs supporting their positions with the trial court. In its entry affirming the arbitration award, the trial court found specifically that the arbitrator had not exceeded her powers, because the award drew its essence from the terms of the CBA. In this regard, the trial court found that the arbitrator's conclusion that placement on "Administrative Attendance Watch" constituted discipline was a "permissible interpretation" of the CBA. The trial court also found that the arbitrator was correct in concluding that there was no "just cause" for subjecting Lt. Schulte to such discipline without any review of whether his use of sick leave was justified. Finally, the trial court found that the arbitrator's' order requiring the Sheriff to reimburse Lt. Schulte for the lost wages he incurred by being denied off-duty private employment was "reasonable."
Accordingly, the trial court affirmed the arbitrator's award and granted the union "summary judgment." Further, the trial court ordered the Sheriff to pay the union its "reasonable costs and attorney fees."
 II.
In his first assignment of error, the Sheriff argues that the arbitrator's award did not draw its essence from the CBA because the sheriff and the union "did not include the loss of wages from private employment as arbitrable discipline in the terms" of the CBA. According to the Sheriff, the award "conflicts with the express terms of [the CBA] which governs only Lt. Schulte's public employment as a corrections supervisor in the Sheriff's office."
As the Sheriff correctly argues, an arbitrator's powers are limited to the "bounds of the agreement from which he draws his authority," and the arbitrator has no authority to decide issues that the parties have not agreed to submit for review. State FarmMutual Insurance Co. v. Blevins (1990), 49 Ohio St.3d 165, 167,551 N.E.2d 955, 957. Were it true, therefore, that the express terms of the CBA clearly excluded lost pay from private employment as a subject of arbitration, we would have no quarrel with the Sheriff's position. However, nowhere in the CBA does it say that the term "lost pay" refers only to a loss of wages from employment with the Sheriff's office. Rather, Section 7.4 of the CBA merely states, "Grievances involving lost pay discipline (suspension, reduction in pay, removal or discharge) shall be initiated at step 3 of the grievance procedure. Grievances involving discipline that does not involve loss of pay shall not be subject to arbitration."
Concededly, one reasonable interpretation of the word "pay" as it is used in the terms "lost pay" and "loss of pay" in Section 7.4 is that advocated by the Sheriff — that the word means, and means only, the employee's pay from the Sheriff's office. This interpretation finds support in the parenthetical listing of types of "lost pay discipline" — "suspension, reduction in pay, removal or discharge" — all of which entail a loss of pay from the Sheriff's office.
Another reasonable interpretation, however, is that advanced by the union — that "pay" means any pay, whether from the Sheriff's office or from a private employer, that is lost as a result of disciplinary action taken by the Sheriff. The parenthetical listing, under this interpretation, would serve only as a nonexhaustive set of examples. We cannot find anything in the express terms of the CBA that forecloses the latter interpretation, nor can we find anything that confirms the former. In short, neither interpretation is unreasonable, and neither is conclusive.
In her award, the arbitrator considered and rejected the Sheriff's interpretation of the word "pay" in this context. She concluded simply that because Lt. Schulte was not eligible for off-duty private employment, which he had shown was otherwise available to him, he had suffered a "loss of pay" under the terms of the CBA.
As the Ohio Supreme Court has stated, "an arbitrator's award draws its essence from a collective bargaining agreement when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful." Findlay City School Dist. Bd. of Edn. v. Findlay Edn.Assn. (1990), 49 Ohio St.3d 129, 132, 551 N.E.2d 186, 189, quotingMahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn.Assn. (1986), 22 Ohio St.3d 80, 488 N.E.2d 872, paragraph one of the syllabus. A reviewing court, furthermore, is not entitled to substitute its judgment for that of the arbitrator in matters of contract interpretation. See Cleveland Police Patrolmen's Assn.v. Cleveland (1994), 99 Ohio App.3d 63, 649 N.E.2d 1291. Only when the arbitrator's award conflicts with the express terms of the agreement, or is without rational support, or cannot be rationally derived from the terms of the agreement, can it be said to depart from the essence of the contract. Ohio Office of CollectiveBargaining v. Ohio Civil Service Employees Assn., Local 11, AFSCME, AFL-CIO (1991), 59 Ohio St.3d 177, 183, 572 N.E.2d 71, 76.
Our standard of review is circumscribed by R.C. 2711.10(D). As the Ohio Supreme Court has paraphrased this section:
[A] reviewing court's inquiry into whether the arbitrator exceeded his authority within the meaning of R.C. 2711.10(D), is limited. Once it is determined that the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious, a reviewing court's inquiry for purposes of vacating an arbitrator's award pursuant to R.C.2711.10(D) is at an end.
Findlay School Dist. Bd. of Edn., supra, at 132-133,551 N.E.2d at 189-190.
Because we can find no basis to conclude that the arbitrator's award conflicted with the express terms of the CBA, or that it lacked rational support, or that it could not be rationally derived from Section 7.4, our review must therefore come to an end. The Sheriff's first assignment of error is overruled.
 III.
In his second assignment of error, the Sheriff argues that trial court's award of attorney fees to the union violated the general rule in Ohio that a prevailing party may not recover attorney fees as costs of litigation in the absence of statutory authority. We agree.
There is no statutory authority for the award of attorney fees contained in R.C. Chapter 2711. The union argues that the award is consistent with the decisions of federal courts that "have not hesitated to award attorney's fees for frivolous or non-meritorious actions to vacate duly awarded labor arbitration awards under the National Labor Relations Act." See, e.g., Local285, Service Employees International Union v. Nonotuck ResourceAssociates, Inc. (C.A.1, 1995), 64 F.3d 735; Monroe Auto Equip.Co. v. United Auto Workers (C.A.6, 1992), 981 F.2d 261; UnitedFood Commercial Workers Union Local No. 770 v. Lucky Stores,Inc. (C.A.9, 1986), 806 F.2d 1385. The union also argues that bad faith is demonstrated when a party insists upon a position that is not "legally justifiable" or exhibits "objectively unreasonable behavior."
We cannot agree with the union, however, that the Sheriff's action in seeking to vacate the arbitrator's award is deserving of any type of sanction. Certainly it cannot be said that the Sheriff's position was legally unjustifiable, or unreasonable, or by any measure frivolous, or even inappropriate. Nor can we accept the proposition that the award was simply within the trial court's discretion — an argument that the union advances without any citation to Ohio law. There is nothing in the trial court's entry or "the conduct of the litigation" that would warrant such an exercise of discretion, even if such discretionary authority existed.
The Sheriff's second assignment of error is, therefore, well taken.
Based on the foregoing, that part of the trial court's order requiring the Sheriff to pay the union's attorney fees is reversed. In all other respects, the trial court's order sustaining the arbitrator's award is affirmed.
Judgment affirmed in part and reversed in part.
 PAINTER and SUNDERMANN, JJ., concur.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Opinion.